IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| DANIEL B. TORRELIO, | ) | C.A. No.2:10cv857-MBS-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVERGREEN SHIPPING AGENCY (AMERICA) CORP., | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

### **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

The Defendant, Evergreen Shipping Agency (America) Corporation (hereinafter "Evergreen Agency" or "Defendant"), by and through its undersigned counsel of record, files this Memorandum in support of its Motion to Dismiss under Rule 12(b), for improper venue, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted. For the reasons set forth herein, Defendant respectfully submits that its motion be granted on or more of these grounds.

### **PROCEDURAL BACKGROUND**

As will more fully appear by reference to the pleadings on file with the Court, Plaintiff, Daniel B. Torrelio (hereinafter referred to as "Plaintiff"), sought to commence this action on or about April 6, 2010, by filing a pleading denominated as "A Complaint", with Exhibit "A" attached (hereinafter collectively referred to as "Complaint"), purporting to set forth a "maritime" claim, based on an unspecified, non-delineated cause of action, and praying for the release of an ocean shipping container said to contain a certain cargo of "red onions" consigned to Plaintiff. No "summons" was attached to

{01799328.}                                                                                                                         1

Plaintiff's Complaint, as required by Rule 4(c), Federal Rules of Civil Procedure.

It appears from Plaintiff's "Answers to Rule 26.01 Interrogatories", filed contemporaneously with his Complaint, that he filed this *pro se* suit as the Plaintiff, and sought leave to proceed *in forma pauperis*. His answer to Rule 26.01 Interrogatory (B) stated that his case should be tried "non-jury".

Thereafter, on or about April 13, 2010, and prior to counsel for Evergreen Agency filing their restricted appearance, Plaintiff mailed to the undersigned counsel a document entitled "Notice of Suit", purporting to be signed by him, but not signed by the Clerk of this Court, nor bearing this Court's seal. It further appears from the pleadings on file with the Court that on April 12, 2010, an Order was entered by U.S. Magistrate Judge Robert S. Carr granting Plaintiff leave to proceed *in forma pauperis,* and also directing the Clerk of Court to issue a summons, which summons was issued by the Clerk on April 13, 2010. (See docket entries 8 and 10 on file with the Court). However, no summons was ever served. Instead, as will appear from the "Certificate of Service" filed by the Plaintiff with the Clerk of Court on April 16, 2010, Plaintiff mailed "a copy of Complaint along with a copy of NOTICE OF SUIT" to the undersigned counsel on or about April 13, 2010. (See, "Certificate of Service", docket entry no. 13, on file with the Court; see also, copy of "Notice of Suit", attached hereto as Exhibit "1"). At the time of that purported "service", the undersigned counsel for Evergreen Agency was not authorized to accept service on behalf of the Defendant, and had not yet filed an appearance in the case.

On April 16, 2010, the undersigned counsel filed and served their "Notice of Appearance", giving notice that they were entering a "restricted appearance" at that time on behalf of the Defendant, Evergreen Agency, but that said appearance did not

constitute a general appearance on behalf of the Defendant, nor was it a waiver or acceptance of service or admission of personal jurisdiction by the Defendant, and that all rights and defenses, including all defenses available to the Defendant under Rule 12(b) of the Federal Rules of Civil Procedure, were expressly reserved. (See "Notice of Appearance", on file with the Court as docket entry 14).

As of this date, neither a summons nor Plaintiff's Complaint have been served upon the Defendant Evergreen Agency.

## FACTUAL BACKGROUND

Plaintiff's Complaint arises out of his apparent misunderstanding and misapprehension of his rights, duties and obligations as the consignee of an international containerized cargo shipment moving by water from the Port of Callao, Peru to the Port of Charleston, South Carolina, pursuant to a contract of carriage, evidenced by that certain Bill of Lading No. EGLV751000010030, dated March 13, 2010 (hereinafter referred to as the "Bill of Lading", a copy of the front of which is attached to Plaintiff's Complaint as a part of Exhibit "A" thereto).[1]  The Bill of Lading was issued by Evergreen Marine Corp. (Taiwan) Ltd. (hereinafter referred to as "Evergreen Line"), as "Carrier".  Plaintiff's cargo is described in said Bill of Lading as "1,178 bags, in 13 pallets, of 'fresh red Peruvian onions'", being transported in a refrigerated ("reefer") "hi-cube" ocean container no. EISU5624041, supplied by Evergreen Line to facilitate transport of the subject cargo.

---

[1] Evergreen Line's standard ocean bill of lading consists of a two-side printed form, with terms and conditions of the contract of carriage printed on the reverse (back) side. Exhibit "A" to Plaintiff's Complaint included a copy of the front side only of the Bill of Lading issued by Evergreen Line covering the cargo in question, but did not include a copy of the reverse side containing the contract terms and conditions. A copy of those terms and conditions is therefore attached hereto as Exhibit "2".

{01799328.}                                                                                                  3

At all times mentioned, Evergreen Agency was and is the U.S. agent for Evergreen Line, its disclosed principal. As indicated in the terms and conditions forming a part of the Bill of Lading, Evergreen Line, not Evergreen Agency, was the designated "carrier" having the contractual relationship with the Plaintiff herein. (See Exhibit "2", Clause 1(2)).

The containership on which the cargo was transported from Callao to Charleston, the M/V SUN ROAD, arrived at the SPA North Charleston Terminal, Port of Charleston, on or about April 3. (See "Arrival Notice/Freight Bill", being a part of Exhibit "A" to Complaint, issued by Evergreen Agency, identifying Plaintiff as the "notify party", and giving notice that Plaintiff's cargo was expected to arrive at the Port of Charleston on board the containership SUN ROAD on or about April 3, 2010.) However, prior to the container's release to the Plaintiff, as consignee of the cargo, U.S. Customs directed Evergreen Agency to make the container available to it, for an examination of the container's contents.

As required by U.S. Customs, Evergreen Agency did make the subject reefer container available for examination by delivering the container, on or about April 3, 2010, to Customs' authorized examination and inspection facility at the Charleston Freight Station ("CFS"), where employees of CFS removed ("stripped") the cargo from the container for examination by Customs agents, and then reloaded the cargo back into the container for return to Evergreen Agency. (See CFS's "Warehouse Container Working Report", attached hereto as Exhibit "3").

With respect to any Customs-ordered inspection or examinations of cargoes, Evergreen Line's tariff covering shipments from West Coast South America ports, such

as Callao, Peru, expressly provided, in pertinent part, as follows:

> "All costs incurred as a result of any Governmental Agency… requiring inspection… of cargo and/or resulting charges incurred are for the account of shippers and/or consignees… at loading/discharging ports.
>
> When cargo in containers is required to undergo inspection by … customs, … carrier's responsibility will be limited exclusively to make the laden container available …, and any inspection requirements, including, but not limited to, opening and closing of containers, manipulation of contents, opening and replacing packages, taking samples and any other consequences resulting from such inspection are at the expense and risk of cargo.
>
> All expenses which may be incurred for any requested examination, at any time during transit must be paid by the shipper, consolidator, or consignee. All charges incurred in receiving or delivery of container to or from carrier's pier are for the account of the shipper(s)/consignee(s) or their agents."

(See, Tariff Rule No. 002-E04, "Examination, Inspection, Sampling, and/or Marking of Cargo", attached hereto as Exhibit "4"). These tariff terms were expressly incorporated by reference in the subject Bill of Lading. (See Exhibit 2, Clause 2).

CFS invoiced Evergreen Agency a total of $2,201.00 for labor and expenses associated with Customs' container exam. (See copy of CFS Invoice #10-2030, dated 4/5/10, forming part of Exhibit "A" to Plaintiff's Complaint). Evergreen Agency, in turn, issued its invoice to Plaintiff for reimbursement of these Customs exam charges, as agreed to in the above-referenced Bill of Lading terms. (See Evergreen Agency invoice, dated April 5, 2010, forming a part of Exhibit "A" to Plaintiff's Complaint.)

Following completion of the U.S. Customs-ordered container examination, Evergreen Agency notified Plaintiff and its customs broker/freight forwarder agent, Access Customs Broker, that the subject container was available for pick-up and delivery at the North Charleston Terminal, upon payment of the Customs exam charges, totaling

$2,076.00.[2]  Had Plaintiff paid this invoice in a timely manner, the container and its contents would have been immediately released to him, thus avoiding the assessment of any further charges.  Indeed, even as late as April 9, 2010 (after "free time" for release of the container had expired and daily demurrage charges had begun accruing), Plaintiff was informed that by paying the Customs exam charges on or before close of business on April 12, 2010, the cargo would be promptly released to him.  (See Evergreen Agency's counsel's email to Plaintiff, transmitted at 2:33 p.m. on April 9, 2010, attached hereto as Exhibit "5").  Unfortunately, Plaintiff refused to take advantage of that offer, and has rejected all subsequent communications by Evergreen Agency and its counsel urging him to settle the container charges due and owing under the contract terms, and take delivery of his cargo.  In the meantime, Evergreen continued to store the container at its container yard at the SPA North Charleston Terminal, with electrical reefer hook-up to maintain the required internal container temperature.

Inasmuch as the onion cargo, though refrigerated, was perishable, Plaintiff's continued refusal to take delivery of his cargo ultimately left Evergreen with no alternative but to exercise its rights and remedies under the Bill of Lading terms and conditions, which allowed for the sale and/or disposition of the cargo to satisfy the carrier's unpaid charges due. (See Exhibit "2" Clause 15, authorizing Evergreen Line "in its absolute discretion to dispose of the Goods and/or to sell the Goods by public auction

---

[2] It will be noted that the Evergreen Agency invoice includes a charge of $75.00 for "Customs Shipside Exam".  This is a standard port charge at the Port of Charleston, assessed on every import container shipment, and was paid in advance by Plaintiff's customs broker, Access Customs Broker.  However, the subsequent stripping and examination of the contents of the container by Customs, a more detailed examination, is done on a random basis, and those charges, which were not anticipated at the time of the vessel's initial arrival in Charleston, were included in Evergreen's subsequent pre-release invoice to Plaintiff.

or private treaty without notice to the Merchant".).[3]

Plaintiff initiated this lawsuit by filing his Complaint in the United States District Court for the District of South Carolina. However, Clause 29 of the Bill of Lading terms and conditions expressly provides, in pertinent part:

> *"(2) U.S. Trades: Notwithstanding anything in subparagraph (1) above, where the shipment covered by this Bill is to or from the U.S.A. (including its districts, territories and possessions), all claims arising hereunder must be brought and heard solely in the U.S. District Court for the Southern District of New York, or if that court is not competent to hear the matter, in any competent state or city court located in New York County, to the exclusion of any other forum. Except as otherwise set out herein, United States law shall apply to such claims."*

From the face of the Bill of Lading covering the shipment in question, it will appear that the shipment involved here was one from Peru to the United States and, as such, "all claims" arising thereunder are required to be brought and heard solely in the U.S. District Court for the Southern District of New York. Notwithstanding that the allegations of the Complaint rely upon the aforesaid Bill of Lading terms and conditions, and involve a "claim" arising thereunder, Plaintiff has filed his action in this Court, in contravention of the aforesaid forum clause.

---

[3] By email dated April 22, 2010, counsel for Evergreen Agency notified Plaintiff that the subject cargo would be inspected by an independent marine surveyor at 11 a.m. on Friday, April 23, 2010, at Evergreen's container yard at the SPA North Charleston Terminal, and Plaintiff was invited to attend that inspection, or have a representative attend on his behalf, to assess the condition of the cargo of onions. (See April 22, 2010 email attached hereto as Exhibit "6"). Plaintiff did not respond to that email, and neither he nor anyone representing him attended the inspection, which was conducted by a qualified marine surveyor, Mr. Bill Blazer, of Ewig International. Mr. Blazer reported that while the cargo at that time may still have some salvage value, any further delay in disposing of the cargo would jeopardize any salvage possibilities. Consequently, Plaintiff was informed by email on April 27, 2010, that unless arrangements were made for settlement of the outstanding charges on the cargo and for release of same by noon on April 28, 2010, Defendant would proceed with the salvage disposition of the cargo, applying any net proceeds from such salvage sale to the outstanding charges owed. (See April 27, 2010 email attached hereto as Exhibit "7"). Again, Plaintiff failed to respond to this notice, and Defendant therefore moved forward with the salvage sale of the cargo, in an effort to mitigate its damages.

**LEGAL ARGUMENT**

1. <u>Plaintiff's Complaint Must be Dismissed Pursuant to Rule 12(b)(3) for Improper Venue</u>.

A motion to dismiss a complaint pursuant to Rule 12(b)(3) has been held to be the proper procedure for enforcing a mandatory forum selection clause such as that contained in the Bill of Lading in this case.  See, *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG,* 560 F. Supp. 2d 432 (W.D.N.C. 2008), enforcing a mandatory forum selection clause in a sales agreement, designating Germany as the proper venue.

As noted above, the contract of carriage (Bill of Lading) governing the cargo shipment in question contained a choice-of-forum clause (also referred to in admiralty as a "forum selection clause"), requiring that all claims arising under the contract be brought in the U.S. District Court for the Southern District of New York (See Exhibit "2", Clause 29(2)).  In the seminal case of *M/S BREMEN v. Zapata Off-Shore Co.,* 407 U.S. 1, 93 S. Ct. 1907 (1972), the U.S. Supreme Court held that "such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 10, 93 S. Ct. 1907.  Such forum selection clauses contained in ocean bills of lading have likewise regularly been enforced in admiralty cases.  See, e.g., *Vimar Seguos Reasaguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528 (1995); *Continental Ins. Co. v. M/V ORSULA*, 354 F. 3d. 603, 606-607 (7th Cir. 2003), enforcing a forum clause in an ocean bill of lading governed, as in this case, by the U.S. Carriage of Goods by Sea Act, 46 U.S.C.S. Section 30701 *et seq.*

Accordingly, the only proper venue for Plaintiff's action was and is the U.S. District Court for the Southern District of New York.  Since, for the same reason, venue

in this Court is improper, Plaintiff's Complaint should be dismissed for improper venue, pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure.

2. <u>Plaintiff's Complaint Must be Dismissed Pursuant to Rule 12(b)(4) for Insufficient Process</u>.

Rule 12(b)(4), Federal Rules of Civil Procedure, provides for the dismissal of a complaint where the plaintiff has failed to comply with the form or sufficiency of the process as set forth in Rule 4, Federal Rules of Civil Procedure. That latter rule requires that: "A summons must be served with a copy of the complaint." Rule 4(c)(1), F.R.C.P. No pleading denominated as a "summons" was ever served in this case. Rather, on or about April 16, 2010, Plaintiff filed a "Certificate of Service" affirming that on April 13, 2010, he "caused to be served upon the Defendant's Attorney… a copy of the Complaint along with a copy of a document denominated as a "Notice of Suit"' (See "Certificate of Service", on file with the Court as docket entry 13). Such Notice of Suit did not qualify as a "summons" under Rule 4, inasmuch as it failed to name the court in which suit was filed, was not directed to the Defendant, did not state the name and address of the Plaintiff, was not signed by the Clerk of Court, and did not bear the Court's seal. See, Rule 4(a)(1), F.R.C.P.

Inasmuch as Plaintiff's process was insufficient, the Complaint must be dismissed.

3. <u>Plaintiff's Complaint Must be Dismissed Pursuant to Rule 12(b)(5) for Insufficient Service of Process</u>.

While Rule 12(b)(4) concerns the form of the process, Rule 12(b)(5) addresses the manner or method of service of that process. See, Rule 12(b)(5), F.R.C.P. "A Rule

12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint." *5B Wright & Miller, Federal Practice & Procedure* §1353, pp. 334-35 (3d. Ed. 2004).

In the instant case, Plaintiff failed to serve the named Defendant with proper "process", to include **both** a summons and a complaint, as required by Rule 4(c)(1), F.R.C.P.. Since no summons was ever served, Plaintiff's Complaint must be dismissed, pursuant to Rule 12(b)(5), F.R.C.P.

4.  <u>Plaintiff's Complaint Must be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim</u>.

As shown above, and as will more fully appear from the face of Plaintiff's Complaint, Plaintiff contracted with Evergreen Line to transport the subject containerized cargo from the Port of Callao to the Port of Charleston, and any claim Plaintiff may have arising out of that contractual agreement would be assertable only against Evergreen Line. Instead, Plaintiff has sued Evergreen Agency, Evergreen Line's disclosed agent, with whom Plaintiff had no privity of contract. Simply stated, Plaintiff has sued the wrong party, and he has no claim against Evergreen Agency, the party named as the Defendant in his Complaint. Accordingly, Plaintiff's Complaint fails to state a claim against the Defendant Evergreen Agency, and said Complaint must be dismissed pursuant to Rule 12(b)(6), F.R.C.P.

## CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed.

                                          BUIST MOORE SMYTHE MCGEE P.A.

                                          /s/ Gordon D. Schreck
                                        Gordon D. Schreck, Fed. ID No. 3754
                                        Julius H. Hines, Fed. ID No. 5807
                                        5 Exchange Street
                                        P.O. Box 999
                                        Charleston, SC  29402
                                        (843) 722-3400

                                        ATTORNEYS FOR DEFENDANT

April ___, 2010
Charleston, South Carolina

{01799328.}                                                                                                                                  11